Alright then, let's get started. The first case is In Re. Application of Hornbeam Corp. Simu v. Hornbeam Corporation. Thank you. May I begin, Your Honor? Yes, please. I'm Bruce Marks. I've reserved a few minutes for rebuttal. Your Honor, the twin aims of Section 1782 were to provide efficient means of assistance to participants in international litigation, to encourage foreign countries to provide such assistance to our courts. I'd suggest that Congress and foreign countries would not consider what occurred in this case to be effective or worthy of encouragement. Let me suggest six things which happened. One here, an American court held an ex parte hearing without any reason, heard one-sided argument from Hornbeam, never asked why the adverse parties were not notified, never asked what they would have said if they had been there, and then adopted almost verbatim Hornbeam's proposed order Is the issue of whether a 1782 application could be filed ex parte moot? No, it's not moot, and I'll tell you why. In response to the arguments in their briefs about that. Yeah, sure. This case is different than the other cases that held in dicta that there was a practice to decide these ex parte. This case is different for three reasons, and they're described in our brief. We suffered harm. They got ex parte discovery, took discovery, and got extensive bank records containing confidential information without any notice at all because this was ex parte, and they possessed them over five months before we learned about it. Number two. How are you prejudiced by that? Your Honor, they had our records for five months containing personal information about Samu and the companies. They could do anything that they wanted with them. They could have given them to New York Times. There was no protective order. I don't think there's any... You're actually prejudiced. Apart from what they could do or what they might have done, how are you actually prejudiced? You had the chance to come back and make your motion and litigate this matter. We're prejudiced by the mere fact, Your Honor, that they had them for five months. We didn't know about it. There was no protective order in place, and they used that information in the Ohio State Court. There's an affidavit from their attorney that they took that information. They used it in the Ohio State Court, and we know ultimately when we got in this case, the court entered a protective order and only allowed that information to be used in the BBI. So there was clear prejudice by them using information that we never knew that they had and a domestic proceeding in the United States, when we all know that 1782, right, is designed for aid outside the... What you want is to preclude... What's the status of the Ohio action? Excuse me? What's the current status of the Ohio action? It was dismissed in part for forum nonconvenience that they should refile in the BBI. The dismissal was affirmed, and here we are three years... Sorry, go back to my original question in terms of actual prejudice. Well, Your Honor, in terms of actual prejudice, as I say, they had our information for five months without us knowing about it. They used it in the BBI, and we don't really know what they did with it. The principal of the other side, Hornbeam, has it. The fact that they may have not... They haven't filed any litigation, so it would appear they haven't used it in litigation, but nobody wants their adversary, who's involved in competing businesses, to have information to which they're not entitled for a long period of time. So that is a... Why is it... Yes? The appropriate remedy, as I understand it, that you're seeking, is a vacature of the ex parte order since Judge Broderick here, as I understand it, said it would have granted Hornbeam's application even if he had participated in the initial hearing. Well, let me say this about that. If something does something improperly, if you're not entitled to get something ex parte, there should be a remedy for that. Because if there's no remedy, if you just say, well, I would have done that anyhow, then there's no sanction for doing things ex... The law doesn't operate that way. There are all sorts of circumstances, even in the criminal context, where something shouldn't have happened the way it did. But if it would have happened properly in any event, the court, the law tolerates it. So here you had a judge grant a protective order. We're talking about what actual prejudice there was, and I haven't heard any identified. So in that sense, the remedy you're seeking seems to be excessive. Why are... What am I missing? Your Honor, we're seeking different remedies. One of the remedies that we suggested that at a minimum the court should order them to destroy the records that have nothing to do with the dispute over Warren Steele. They have bank records of our clients, have nothing to do with the dispute. If their claim is that there were improper transactions with Warren Steele or Halliwell, then give them those bank records. That's what the judge in Alabama did. Let's not forget, every judge who entered an ex parte order, who then heard our side, changed the order. In Ohio, the judge stayed the discovery before they could serve subpoenas. In Alabama, and this is very important, once the judge there heard us, she said, you know what, I'm only going to give them the bank records of Warren Steele and Halliwell. You don't get the bank records of the individuals. You don't get the bank records of the related companies. That's really the most important prejudice that we have suffered because they're not entitled to it. Let them have the bank records of Warren Steele. Let them have the bank records of Halliwell. But as a means of addressing what happened, whether it's a sanction or whether because the discovery was too intrusive, too overly broad, that is the most important thing that we're asking the court to do. Make them destroy, give back the bank records that have nothing to do with the companies in which they have an interest. And there's other grounds your honor can do that. But admittedly, they didn't fulfill their duty of disclosure. You ask me, well, what should you do about that? You're going to say, well, there was no prejudice because he would have decided that anyhow. That's not right. If you have a duty of disclosure and you admittedly violate it, the judge held, well, you know, you can't sanction the party. That's just simply wrong. The Supreme Court has said if the attorney does something wrong, you can sanction the party. We all know under Rule 45, if you issue subpoenas without notice, and that's what happened here. Can you identify a case where we vacated a 1782 order for something other than the failure to satisfy? No, your honor, I can't, because this is the first time that I'm aware of in this circuit where there was clearly a violation of the duty of disclosure. The judge found that. The judge said that there were clearly things that should have been told to me that weren't. We know that from Ohio, your honor, because when the judge there learned that they couldn't bring new BVI proceedings until they paid that $800,000 judgment, she immediately stayed the case until they did it. They never did. And that was wrong, too. There was a BVI policy that you can't bring a new case until you pay your judgment from the old one. The judge should have never given the discovery in the first place, and that's what happened in Ohio. When she said, you know what, they haven't paid the judgment, you know, we all know under the discretionary factors of 1782, one reason not to give discovery is because it violates the public policy of either the United States or another country. They couldn't use the records in the BVI because the court wouldn't have allowed the new proceeding to go forward. I think they paid the fine. Yeah, and they didn't. But we don't know that they wouldn't. Well, the judge said, give me a break. In Ohio, she said it's so small, if he's so rich, he would have paid the fine. But he didn't. We actually know what happened. The only reason that he paid the fine is we brought execution proceedings in the BVI against the shares, and they ultimately had to pay the fine or else we would have taken the shares and then Hornbeam would have had no interest in Halliwell. But, your honor, the other issue on the issue of sanctions and prejudice, on Rule 45, we know the case is religion. If you serve subpoenas without notice, which is what happened here, and then you get discovery, which is what happened here, one of the sanctions that they give, even if the court would have said that subpoena is fine, they say you can't use the discovery. But where we're focused on here, your honor, is the records that don't have to do with Halliwell and Warren Steele. They should have never received those records. It's intrusive. It's overly broad. They're not related to their dispute. They haven't even filed a case anyhow. So if they violated the duty of disclosure, if they serve subpoenas without notice, or if you just find independently what you can do that the discovery was too intrusive, at the end of the day, that is the remedy that we're seeking. Thank you, Judge. Dennis Tracy for Hornbeam. Your honors, this discovery order and similar ones have been issued by five different federal courts around the country and reviewed extensively by them on motions by Mr. Simmew. And in all five cases, the order was issued. Indeed, it's been reviewed by the Eleventh Circuit. The Eleventh Circuit has considered virtually all of the arguments that are being made here, including the argument about issuance ex parte and has upheld the discovery order. It's clearly a proper order. Under 1782, this court has held numerous times, as has every other court that's considered it, that these proceedings may be done ex parte, it is commonplace, and it is appropriate. So Mr. Marks is asking for a very limited remedy, which is to destroy the bank records that have nothing to do with Hallowell or Warren Steele. And I take it that your response is going to be that all of these documents at least will shed light on the alleged fraudulent scheme. Your Honor, this issue of the breadth of discovery, I would break it down into two pieces, perhaps. The first is whether the actual – there were certain documents that were produced by the banks that were erroneously produced. In other words, they were related to other parties. They had nothing to do with this party. So those are not relevant to this case. We don't care about them. They're never going to be used. They are subject to a protective order, so they can never be disclosed to anybody or used in any proceeding. The complaint that has been raised by Mr. Simio is that the documents that the court authorized be produced is overbroad, and we don't believe they are overbroad. This has been raised numerous times by Mr. Simio. The district court has specifically addressed the issue. Originally, during the ex parte proceedings, the court looked at the scope of the discovery and said, you know what, this is too broad, I'm not going to allow this, and required the applicant to revise the discovery request to make it more narrow. The judge approved it on that basis. And then when Mr. Simio objected to the scope of discovery, the court took that very seriously, had several hearings on whether the scope of discovery was appropriate, and properly found, and this is vested in his discretion, that those documents were relevant to the issues that were at issue in the potential foreign proceedings, and we strongly, strongly agree with that and believe that the record strongly supports it. I would point out also that the judge was very careful to respect the potential rights of the foreign parties. A very extensive protective order was entered. These documents cannot be, as was said, given to the New York Times. They can't be used in any way. They can't be disclosed, and they actually can't be used in any proceeding except the BVI proceeding. So the court has exercised its discretion in a very careful way after multiple requests to address this issue. What is the status of the deadline for the BVI proceeding? Under the protective order, the court has given us until May of 2018 to either file the BVI proceeding or destroy the documents. That deadline can be extended if we apply to the court and request an extension, and I can't predict whether that's going to happen, but the Hornbeam is attempting to gather documents not just in New York but in other jurisdictions, including Florida, which is a very important place for the documents in this case, and because of multiple proceedings that we've had in Florida, we have not yet gotten any documents there, so we're still working to collect the documents in order to file a case. In the meantime, we've filed a case in the English courts, which was one of the other jurisdictions or one of the other cases that this application was based on. I'll just briefly address the issue of the BVI judgment. As the court below properly held, this is a very large case with a very large amount of money at stake, tens of millions if not hundreds of millions of dollars between two very well-off or three very well-off parties, and in the BVI there was essentially a cost assessment under BVI law of $846,000. It's not entirely clear whether that would have to be paid before a BVI case could be filed, but it was paid, and it would be very hard to imagine that a party would walk away from a tens or hundreds of millions of dollars case just because he had to pay a cost assessment in a prior BVI action. So the district court in this case as well as other cases have considered this issue and determined in their discretion, it's a discretionary issue, that the existence of that cost order would not preclude Hornbeam from filing a foreign proceeding. In terms of the Rule 45 issue, as we've noted, that issue is completely moot. The parties have had full opportunity to object to it, but I would point out that there is no requirement in Rule 45 to notify potential adverse foreign parties. Rule 45 requires the prior notice to a party, and it's very different from Rule 27, which if you are going to try to take a deposition of a potential party, there is a requirement specifically in Rule 27 to notify that potential foreign party. That does not exist in Rule 45. Why isn't this one of those cases where the issue, the ex parte issue, is capable of repetition yet evading review? In the sense that a party might be able to – they're really criticizing the ex parte nature of the matter, and you're saying no, no, it's moot because they subsequently had an opportunity to duke it out, for lack of a better term, and to participate. But why isn't this issue of whether it's appropriate to proceed ex parte one of those issues that might evade review? There have been many, many cases, Your Honor, involving ex parte proceedings. Of course, the courts have consistently held that ex parte proceedings are appropriate. You're making an argument about mootness, so that goes to our jurisdiction, so I'm interested. It's an interesting question, Your Honor. It potentially could evade review. It would be reviewable in the event that a subpoena was issued, and I guess there was no review, and the party then comes in later. So it might not be moot. It might not be moot in other cases. Back to the notice argument, the district court found that you violated the rule. The district court found that there was no case on point, but that if you looked at the overall structure of discovery under the federal rules of civil procedure, he acknowledged that there was no case that held it and no rule that held it, but he thought it was the right way to go. And you have not – I mean, you're arguing with us today that you were under no notice of violation, but you didn't appeal that part of the ruling. I mean, what the district court ultimately did was it declined to vacate or quash saying that Simu wasn't prejudiced from the lack of notice. But I don't know how you argue to us that you were under no notice obligation when you haven't appealed that ruling. I mean, you can defend the decision that there was no prejudice, but I'm not sure you can argue that you can challenge the ruling of the district court now. I accept that, Your Honor. The court did hold that there was no prior guidance on that, and so that was understandable. Perhaps you're doing it – You're asking us now to say that there is no obligation to give notice in a circumstance such as this, and I don't see why we should do that when you didn't appeal the ruling. I agree with that, Your Honor. Right, but I understand. I took your point to be that that kind of explained why what happened happened. Exactly, Your Honor. At the time that this application was made and the subpoenas were issued, there was no guidance on this. And so to ask for sanctions against a party who acted based on violation of a rule that didn't exist would be inappropriate. Thank you. Thank you, Your Honor. Marks, I think you have a few minutes. Is this yours or mine? Yours. Thanks. Judge, yes. Judge Lohr, it's not moot. The court should address the issue of ex parte. It happens. It's happening all the time. I don't want to argue it in detail. It's in our briefs. In this case, it violated the local rule of the Southern District of New York. And there's also a judicial canon on point regarding ex parte communications. We think it's a serious issue, not just because of us, because as the court in the Ninth Circuit said, we cite it in our brief. Ex parte proceedings are anathema to our system. I'll let Your Honors decide that issue on the briefs, but we think it's an important issue substantively in this circuit. Next. Every judge, there was somebody who just spoke here, every judge who has heard our side, Florida, Alabama, Ohio, changed their position once they heard our side. In Florida, the court stayed the discovery. We still haven't had a hearing on the motion to vacate, but the subpoenas have never been allowed to be served. In Alabama, the court did exactly what I said she did. She narrowed the scope of the subpoenas to only the Warren, Steele, and the Hallowell records. That's the only thing that the Eleventh Circuit affirmed. In Ohio, the court stayed the discovery because she concluded that if they hadn't paid the BVI judgment, which they never did voluntarily, Your Honor, that proceedings were within reasonable contemplation. They still haven't served the discovery in Delaware. I mean, they say that we're the reasons that there's delay. They didn't serve the subpoenas in Florida for a year and a half. They didn't serve the subpoenas in Ohio for a year and a half. And here we are three years later after they got subpoenas in Delaware. They weren't served. And they had subpoenas in this district against two accounting firms and a law firm for which the principles, our principles, were clients. They didn't serve the subpoenas on them because they knew that those companies would have immediately notified our clients that there was an ex parte order. We only learned about this through the media. It sounds to me like you're making the argument that you will make in May of 2018 when they seek an extension, that they haven't been, they've been deletery. Well, Your Honor, we don't believe on this record that new proceedings are within reasonable contemplation at all. And that's what the court in Ohio concluded when she stated because they didn't pay the BVI judgment. And there was absolutely no rationale for them not to have paid it if they wanted to get the discovery because they couldn't use the discovery in the BVI. Let me add a point on the issue of disclosure. If there's a duty of disclosure, they violated it. The Pioneer case, Supreme Court, in our brief, that's where the client was sanctioned because of the conduct of the attorneys. Let's talk about the notice under Rule 45. It's really a ridiculous point. Of course there had to be notice. And, Your Honor, you were on a case, I believe, where you cited Gooselack and said, well, this is the practice they do at ex parte for 1782. Why did Gooselack come to that conclusion? It said because you would get notice so that you could challenge the subpoenas. They cited that case in their brief in order to get the ex parte order. How in the world could we have gotten notice to challenge the subpoenas if they didn't provide them to us? Any experienced practitioner. I understand that the one failure in your mind aggravates the other. But, you know, at a certain level, we take them apart, and I understand why that might support the notice argument. Rule 45. I'm not sure that that warrants us saying that revisiting the ex parte order is part. Absolutely two different issues, Your Honor. One's the issue. Do you have a duty of disclosure in an ex parte proceeding? And if you violate it, what's the sanction? At a minimum, the sanction ought to be that they destroy the unrelated records. Second, Rule 45. Separate issue. Absolutely. Okay. They had a duty to serve the subpoenas on this. What's the sanction? And there's cases, we cite them in our brief, you know, where there's actual harm because they got the records. The sanction, at a minimum, ought to have been that they had to destroy the unrelated records. Let me just add one other point, Your Honor, to the question that you asked. I will ask you to do it quickly. Okay. On prejudice. The other prejudice we suffered is we couldn't seek a stay of the order before the discovery was issued. We got a stay from the 11th Circuit. Even if Judge Broderick disagreed with us, okay, if we had had notice and we would have litigated and he would have entered the order before the subpoenas were served or at least before the discovery was issued, it's a final order. That's what happened in the 11th Circuit. We appealed it. We went to the 11th Circuit, and we got a stay. That right was stripped from us because it was an ex parte proceeding that we never got notice of. Thank you. Thank you both very much. We will take the matter under advisement.